IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

STEPHANIE FREEMAN,                 )
                                    )
          Plaintiff,                )
                                    )
vs.                                 )          Case No. 2:16-cv-1956-TMP
                                    )
COMMISSIONER, Social Security       )
Administration,                     )
                                    )
          Defendant.                )

## MEMORANDUM OPINION

## I.    Introduction

The plaintiff, Stephanie Freeman, appeals from the decision of the Commissioner of the Social Security Administration ("Commissioner")[1] denying her application for a period of disability, Disability Insurance Benefits ("DIB"), and Supplemental Security Income ("SSI"). Ms. Freeman timely pursued and exhausted her administrative remedies, and the decision of the Commissioner is ripe for review pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3). Additionally, on June

---

[1] It appears from news reports and from filings by the Government in other Social Security appeals that Nancy A. Berryhill, who was named as the defendant, is no longer the Acting Commissioner of Social Security and that, at this time, the position is unfilled. The Clerk is DIRECTED to change the style of the case as reflected above.

7, 2018, the plaintiff filed a motion for remand of this matter to the Commissioner pursuant to Sentence Six of 42 U.S.C. § 405(g), based upon a favorable decision entered in the plaintiff's favor by a different administrative law judge in a subsequently-filed disability application. (Doc. 19). A copy of that decision by another ALJ is attached to the motion. (Doc. 19-1). The government has filed a brief in opposition. (Doc. 20).

The parties have consented to the jurisdiction of the undersigned magistrate judge pursuant to 28 U.S.C. § 626(c).

Ms. Freeman was 38 years old at the time of the Administrative Law Judge's ("ALJ's") decision. Although she dropped out of school in the ninth-grade, she later received her GED. (Tr. at 44, 57). Her past work experiences include work as a janitor, a cashier, an assembly-line worker, and a mental health technician. (Tr. at 28). Ms. Freeman claims that she became disabled on December 14, 2012, due to depression, anxiety, back pain, leg pain, and bladder problems. (Tr. at 228).

When evaluating the disability of individuals over the age of eighteen, the regulations prescribe a five-step sequential evaluation process. *See* 20 C.F.R. §§ 404.1520, 416.920; *see also Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). The first step requires a determination of whether the claimant is "doing

substantial gainful activity." 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If she is, the claimant is not disabled and the evaluation stops. *Id.* If she is not, the Commissioner next considers the effect of all of the physical and mental impairments combined. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). These impairments must be severe and must meet the durational requirements before a claimant will be found to be disabled. *Id.* The decision depends upon the medical evidence in the record. *See Hart v. Finch*, 440 F.2d 1340, 1341 (5th Cir. 1971). If the claimant's impairments are not severe, the analysis stops. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). Otherwise, the analysis continues to step three, which is a determination of whether the claimant's impairments meet or equal the severity of an impairment listed in 20 C.F.R. pt. 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the claimant's impairments fall within this category, she will be found disabled without further consideration. *Id.* If she does not, a determination of the claimant's residual functional capacity ("RFC") will be made and the analysis proceeds to the fourth step. 20 C.F.R. §§ 404.1520(e), 416.920(e). Residual functional capacity is an assessment based on all relevant evidence of a claimant's remaining ability to do work despite her impairments. 20 C.F.R. § 404.1545(a).

The fourth step requires a determination of whether the claimant's impairments prevent her from returning to past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant can still do her past relevant work, the claimant is not disabled and the evaluation stops. *Id.* If the claimant cannot do past relevant work, then the analysis proceeds to the fifth step. *Id.* Step five requires the court to consider the claimant's RFC, as well as the claimant's age, education, and past work experience, in order to determine if she can do other work. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the claimant can do other work, the claimant is not disabled. *Id.* The burden of demonstrating that other jobs exist which the claimant can perform is on the Commissioner; and, once that burden is met, the claimant must prove her inability to perform those jobs in order to be found to be disabled. *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999).

Applying the sequential evaluation process, the ALJ found that Ms. Freeman has not been under a disability within the meaning of the Social Security Act from the alleged date of onset through the date of his decision. (Tr. at 28). Although he determined that Ms. Freeman has not engaged in substantial gainful activity since the alleged onset of her disability (Tr. at 18), the ALJ found that Ms. Freeman's

degenerative disc disease and arthritis of the L5-S1 joint and facet joints may be considered "severe" based on the requirements set forth in the regulations. (Tr. at 18-10). He further determined that these impairments neither meet nor medically equal any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. at 21). The ALJ did not find Ms. Freeman's allegations of the disabling effects of her impairments to be entirely credible. (Tr. at 28). He determined that the plaintiff has the residual functional capacity to perform medium work with the following limitations: that she can sit at least two hours without interruption and six hours in an eight-hour workday; can stand and/or work at least two hours without interruption and a total of at least six hours in an eight-hour workday; cannot climb ladders, ropes, poles, or scaffolds; can occasionally climb ramps and stairs; can frequently use her upper extremities for reaching overhead; can frequently use her lower extremities for pushing, pulling, and operating foot controls; can frequently balance, stoop, kneel, and crouch; can occasionally crawl; can occasionally work in humidity, wetness, and extreme temperatures; can occasionally work in dust, gases, odors and fumes; cannot work in poorly ventilated areas; cannot work at unprotected heights; cannot work with operating

hazardous machinery; can frequently work while exposed to vibration; can frequently operate motor vehicles.  (Tr. at 21).

According to the ALJ, Ms. Freeman is able to perform past relevant work as a production assembler, mental health technician, cashier, and industrial cleaner. (Tr. at 28).  The ALJ concluded his findings by stating that Plaintiff is "not disabled" under the Social Security Act.  (Tr. at 28).

## II.    Standard of Review

This court's role in reviewing claims brought under the Social Security Act is a narrow one.  The scope of its review is limited to determining (1) whether there is substantial evidence in the record as a whole to support the findings of the Commissioner, and (2) whether the correct legal standards were applied.  *See Richardson v. Perales*, 402 U.S. 389, 390, 401 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002).  The court approaches the factual findings of the Commissioner with deference, but applies close scrutiny to the legal conclusions. *See Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996).  The Court may not decide facts, weigh evidence, or substitute its judgment for that of the Commissioner.  *Id.*  "The substantial evidence standard permits administrative decision makers to act with considerable latitude, and 'the possibility of drawing

two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'" *Parker v. Bowen*, 793 F.2d 1177, 1181 (11th Cir. 1986) (Gibson, J., dissenting) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)).  Indeed, even if this Court finds that the evidence preponderates against the Commissioner's decision, the court must affirm if the decision is supported by substantial evidence.  *Miles*, 84 F.3d at 1400.  No decision is automatic, however, for "despite this deferential standard [for review of claims] it is imperative that the Court scrutinize the record in its entirety to determine the reasonableness of the decision reached."  *Bridges v. Bowen*, 815 F.2d 622, 624 (11th Cir. 1987).  Moreover, failure to apply the correct legal standards is grounds for reversal.  *See Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984).

## III.  Discussion

### A.  Remand Motion

As a threshold matter, the court is required to examine the Plaintiff's motion to remand this case to the Commissioner under Sentence Six of § 405(g).  In her motion filed June 7, 2018, the Plaintiff points out that after the denial of disability benefits in the instant case on July 28, 2015, a different ALJ in a different

application granted her disability benefits on June 4, 2018, finding her disabled from and after an onset date of August 6, 2015.[2]  Ms. Freeman contends that this fully favorable decision constitutes "new evidence" that was not available to her at the time she sought benefits in the instant matter.  She notes that, in awarding her disability benefits beginning on August 6, 2015, the ALJ in the other case relied upon an evaluation by the Plaintiff's physician dated November 13, 2014, which is the same evaluation report considered by the ALJ in the instant case in which disability benefits were denied.  She appears to argue that the fact of this fully favorable decision finding her disabled as of August 6, 2015, should be considered in this case as "new evidence" that, in fact, she was disabled on July 28, 2015, when she received the unfavorable determination in the instant case.

Sentence six of § 405(g) authorizes the district court to remand a case to the Commissioner "upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding."  42 U.S.C. § 405(g); see *Jackson v. Chater*, 99 F.3d 1086, 1092 (11th Cir. 1996).  The court of appeals has explained that a Sentence Six

---

[2]    In the instant case, Ms. Freeman alleged an onset date of December 14, 2012, while in the application decided in her favor, she alleged an onset date of August 6, 2015, a mere nine days after the final unfavorable determination in the instant case.

remand is not contingent upon the district court finding error by the Commissioner. "A sentence-six remand does not result from any error by the Commissioner. A sentence-six remand is warranted even in the absence of any error by the Commissioner if new, material evidence becomes available to a claimant, and the claimant could not have presented that evidence at his original hearing." *Jackson v. Chater*, 99 F.3d 1086, 1095 (11th Cir. 1996). The purpose of a Sentence Six remand is to allow the Commissioner to consider "new" and "material" evidence not available at the time of the Commissioner's determination. Assuming "new" and "material" evidence of disability is developed after the Commissioner's determination, the district court may order a remand to the Commissioner for consideration of such evidence, while retaining jurisdiction of the case for review after reconsideration by the Commissioner. See *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1261 (11th Cir. 2007) ("[S]entence six is appropriate for the Commissioner to consider new evidence that the Commissioner did not have an opportunity to consider because the evidence was not properly submitted to the Appeals Council.").

Because the fully favorable decision dated June 4, 2018, was not available for consideration by the Commissioner at the time of the final determination in this

case, there is no question that it is "new" and "there is good cause for the failure to incorporate such evidence into the record in a prior proceeding."  The issue is whether the fact of the fully favorable determination is evidence that is "material" to the earlier determination made in instant case.  To be "material" for purposes of triggering a Sentence Six remand, the new evidence must be "relevant and probative so that there is a reasonable possibility that it would change the administrative result…." *Caulder v. Bowen*, 791 F.2d 872, 877 (11th Cir. 1986). The court believes it is not.

To be clear, the "new" evidence advanced here by Ms. Freeman is the simple fact of the subsequent favorable decision made in another application for benefits was a different onset date.  Her motion for remand pursuant to Sentence Six states plainly:

> Plaintiff moves to remand this claim pursuant to Sentence Six of 42 U.S.C. §405(g) based on a subsequent Favorable Decision with an onset date just after the ALJ denial and based on the issues previously raised.   A subsequent Fully Favorable decision was issued on **6/4/18** with an onset date of **8/6/15**.  [Citation to exhibit omitted].
>
> The ALJ issued an Unfavorable Decision on 7/28/15. (R-13-39)
> The subsequent Fully Favorable decision [Citation to exhibit omitted] was not available prior to filing the lawsuit.  Because the evidence is new, it could not have been produced at the ALJ hearing.

(Doc. 19). She does not assert that new medical records or examinations occurred after the determination made in this case which may be chronologically relevant to the disability issued presented. Indeed, she points out that the favorable decision made on June 4, 2018, relied on the same medical evaluation made by Dr. Khusro presented in the instant case. The medical evaluation itself cannot be said to be "new" evidence in this case; it is evidence presented and considered in this case. The thrust of her motion is, rather, that a different ALJ considering a different application for disability benefits found Dr. Khusro's evaluation persuasive, while the ALJ in the instant case did not. It is the fact that a subsequent favorable determination of disability occurred that is asserted as the new and material evidence.

A similar argument has been rejected by the Eleventh Circuit. In *Hunter v. Soc. Sec. Admin., Comm'r*, 808 F.3d 818 (11th Cir. 2015), the court of appeals described a similar argument: "Hunter contends that the earlier unfavorable decision should be remanded to the Commissioner for further consideration because the second favorable decision constitutes new and material evidence for purposes of § 405(g)." *Id.* at 821. The court of appeals has rejected the argument at least twice, first in *Hunter* and again in *Arnold v. Soc. Sec. Admin., Comm'r*, 724

F. App'x 772, 783 (11th Cir. 2018) ("[T]he mere fact that a claimant was subsequently awarded benefits is not itself, "'as opposed to the evidence supporting the subsequent decision,"' new and material evidence warranting a remand of a prior denial of benefits."). In *Hunter*, agreeing with the Sixth Circuit, the court explained:

> Unlike the Ninth Circuit, the Sixth Circuit rejected the notion that "the mere existence of the subsequent decision in [the claimant's] favor, standing alone," warranted reconsideration of the first application. [Citation omitted]. The court explained that "a subsequent favorable decision itself, as opposed to the evidence supporting the subsequent decision, does not constitute new and material evidence under § 405(g)." [Citation omitted] Because the claimant rested his case for remand solely on the later decision, the Sixth Circuit concluded that he had not satisfied his burden for obtaining a remand. [Citation omitted]
>
> The Sixth Circuit's position is correct, the Ninth Circuit's is wrong. A decision is not evidence any more than evidence is a decision.
>
> . . .
>
> In this case, the only "new evidence" Hunter cites in support of her request for remand is the later favorable decision. In light of our holding today, that decision is not evidence for purposes of § 405(g). Because Hunter does not offer any other new evidence, she has not established that remand is warranted.

*Hunter v. Soc. Sec. Admin., Comm'r*, 808 F.3d 818, 821–22 (11th Cir. 2015).

The same argument is advanced in this case, and it must meet the same fate. The mere fact that a different ALJ rendered a favorable determination for Ms. Freeman, based on an application with a different onset date, is not "material" to the determination made in the instant case. Her motion for a Sentence Six remand is DENIED.

### B. Merits of the Commissioner's Determination

Ms. Freeman alleges that the ALJ's decision should be reversed and remanded because: (1) the ALJ failed to give proper weight to the opinion of Dr. Huma Khusro, a treating physician; (2) ALJ Lassiter is biased against claimants based upon his fourteen percent rate of approval rate on disability applications in 2015; (3) the ALJ failed to develop the record by ordering a consultative psychological examination; and (4) the ALJ's finding that the claimant can perform past work is not supported by substantial evidence and is not in accordance with proper legal standards. The Commissioner has responded by asserting that (1) the ALJ gave proper weight to Dr. Khusro's opinion; (2) the ALJ was not biased; (3) the ALJ fully developed the record; and (4) substantial evidence supports the

decision that the plaintiff can perform her past relevant work. The court addresses each claim in turn.[3]

(1). Treating Physician and Medical Source Assessment

Under prevailing law, a treating physician's testimony is entitled to "substantial or considerable weight unless 'good cause' is shown to the contrary." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1159 (11th Cir. 1997)(internal quotations omitted). The weight to be afforded a medical opinion regarding the nature and severity of a claimant's impairments depends, among other things, upon the examining and treating relationship the medical source had with the claimant, the evidence the medical source presents to support the opinion, how consistent the opinion is with the record as a whole, and the specialty of the medical source. *See* 20 C.F.R. §§ 404.1527(d), 416.927(d). "Good cause" exists for an ALJ to not give a treating physician's opinion substantial weight when the "(1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) [the opinion] was conclusory or inconsistent with the doctor's own medical records." *Phillips v. Barnhart*, 357 F.3d 1232, 1241 (11th Cir. 2004) citing

---

[3]    Although the court has denied the motion to remand this matter under Sentence Six of § 405(g), it considers the motion only for its discussion of the weight given to the treating doctor's assessment.

*Lewis*, 125 F.3d at 1440; *see also Edwards v. Sullivan*, 937 F.2d 580, 583-84 (11th Cir. 1991)(holding that "good cause" exists where the opinion was contradicted by other notations in the physician's own record).

Opinions such as whether a claimant is disabled, the claimant's residual functional capacity, and the application of vocational factors "are not medical opinions, . . . but are, instead, opinions on issues reserved to the Commissioner;" thus the court "may not decide facts anew, reweigh the evidence, or substitute [its] judgment for that of the Commissioner." *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). The court instead looks to the "doctors' evaluations of the claimant's condition and the medical consequences thereof, not their opinions of the legal consequences of his [or her] condition." *Lewis*, 125 F.3d at 1440. *See also* 20 C.F.R. § 404.1527(d)(1)("A statement by a medical source that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled."). Such statements by a physician are relevant to the ALJ's findings, but they are not determinative, because it is the ALJ who bears the responsibility of assessing a claimant's residual functional capacity. *See, e.g.*, 20 C.F.R. § 404.1546(c).

The plaintiff asserts that the ALJ failed to give proper weight to the opinion of Dr. Huma Khusro, arguing that Dr. Khusro was a treating physician.[4] The records provided by Dr. Khusro indicate that she opined that Ms. Freeman had "significant depression," along with learning disabilities and borderline IQ functioning, that had "worsened over time" and would "prevent her from working." (Tr. at 749). Dr. Khusro filled out a mental medical source statement on November 13, 2014 (tr. at 747-49), which indicated Ms. Freeman had "marked" limitations in eight of the 19 areas listed on the form, "extreme" limitations in three areas, and mild or moderate limitations in the remaining areas. The medical source statement was completed two weeks after the plaintiff saw Dr. Khusro for the first time on October 28, 2014. (Tr. at 804-08).

On the first visit in October 2014, Dr. Khusro's notes indicate that Ms. Freeman reported feeling "depressed & anxious & overwhelmed." (Tr. at 805). Ms. Freeman told the doctor that she was a "slow learner." (*Id.*). Ms. Freeman also reported that she had "tried to cut [her] wrists with a butter knife" two years

---

[4]     The records indicate that Ms. Freeman saw Dr. Khusro on two occasions, once on October 28, 2014, and again on December 12, 2014, and that the doctor completed the mental evaluation form on November 13, 2014, after only one examination. The records from Ms. Freeman's hospital visit on November 19, 2014, indicate that she was sent to the emergency room from Dr. Khusro's office, but his records do not contain any reference to a November 19 visit.

earlier, and had "run car in ditch a few years ago." (*Id.*) On the same visit, the doctor observed that Ms. Freeman was casually dressed and neatly groomed, had good eye contact, had coherent and goal-directed speech, exhibited an anxious and dysphoric mood, and presented with a congruent affect. (Tr. at 807).

On November 19, 2014, about three weeks after her first visit to Dr. Khusro, Ms. Freeman went to the emergency room with complaints of increasing depression, auditory and visual hallucinations, and thoughts of suicide. (Tr. at 764). She reported at the ER that her depression had been getting worse since June or July, but she denied a history of suicide attempts or depression. (*Id.*) She was admitted for psychiatric care, and remained in the hospital for two and a half days. (Tr. at 764-66). The record reflects that Dr. Khusro saw Ms. Freeman a second time on December 4, 2014. (Tr. at 803). At that visit, Ms. Freeman reported that she "feels depressed," but has "good and bad days with depression," and has crying spells. (Tr. at 804). Dr. Khusro noted that the plaintiff "does not have a structure to her days and is not very active" and "has to push [her]self to do ADLs [(activities of daily living)]." (*Id.*) The doctor also reported:

> MENTAL STATUS EXAM: significant for casually dressed, neatly groomed Caucasian woman who sits comfortably and makes good eye

contact. Speech is clear, coherent and goal directed. Mood is somewhat dysphoric and anxious, affect is full range and congruent. Thought processes significant for absence of any active lethal ideations, + preoccupation w stressors, +helplessness but no hopelessness, no paranoia, no delusions, no formal thought d/o. No O/C/P. No LOAs, no FOIs. No perceptual abnormalities in terms of any A/V hallucinations. Cognitively the pt is A & O xes 3. Insight and judgment are limited. Grossly ST and LT memory is intact. Concentration is diminished, attention span is fair. No EPS or cog-wheeling. No gross language deficits. Gait is non-ataxic. Fund of general knowledge is diminished.

Assessment: MDD
        ? Borderline IQ functioning

(Tr. at 803).

The plaintiff complains that the ALJ erred in not giving Dr. Khusro's opinion sufficient weight, and argues that the ALJ substituted his own opinion for that of the treating physician. The ALJ assigned "little weight" to the medical source statement from Dr. Khusro that indicated the plaintiff was unable to work. As the Commissioner points out, however, the medical source statement upon which plaintiff relies was prepared after Dr. Khusro had examined Ms. Freeman only once—an examination that appears to have been based on the plaintiff's subjective complaints, and her recitation of a family history of depression. The ALJ correctly questioned whether Dr. Khusro should be deemed a "treating physician," based

upon his opinion having been rendered after only one examination. *See Crawford v. Comm'r of Soc. Sec.,* 363 F.3d 1155, 1161 (11th Cir. 2004) (citing *McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir.1987) (stating that a doctor who examines a claimant on only one occasion is not considered a "treating physician"). In addition, the opinion was merely a "checklist" of functions, and the ALJ was therefore entitled to give the opinion less weight. *See, e.g., Hackett v. Barnhart*, 395 F.3d 1168, 1174 (10th Cir. 2005); *Tippe v. Colvin*, 669 F. App'x 332, 333 (8th Cir. 2016); *but see Garrison v. Colvin*, 759 F.3d 995, 1013 (9th Cir. 2014) (affording more weight to "check-box" opinion where that opinion was based on doctor's "significant experience" with the patient and was supported by "numerous records," but noting that an "otherwise unsupported and unexplained check-box form" would not merit such weight). Dr. Khusro's opinion was based upon only one examination of Ms. Freeman, was not supported by other records or any objective data, was not in accordance with Ms. Freeman's previous mental health treatment, and was contradicted by the doctor's own narrative records.

When Dr. Khusro examined Ms. Freeman for the second time, just days after he had declared she was unable to work, he noted that she sat "comfortably" and made good eye contact, with clear, coherent, and goal-directed speech. (Tr. at

803).  The December 2014 examination also described her mood as "somewhat dysphoric and anxious," but indicated that she had no hallucinations, a fair attention span, no suicidal ideations, and intact short- and long-term memory. (Id.).  It is clear from the doctor's report that Ms. Freeman had shown significant improvement since her hospitalization the month before, and thus had improved since the doctor opined that Ms. Freeman had "marked" limitations in so many areas.

It also should be noted that, while Ms. Freeman's psychological issues appear to have escalated suddenly in November and December of 2014, there is no indication that the severity of the depression or anxiety had a significant effect on her ability to work at her alleged onset date, or that the more severe condition continued after she received treatment late in 2014.  The doctor's opinion that her "marked" limitations would or did continue for 12 months is unsupported by her own records or by the records of her other doctors.   Accordingly, the ALJ had adequate reasons for giving the mental status form signed by Dr. Khusro "little weight," even if the doctor qualified as the plaintiff's treating physician.  In sum, the ALJ did not improperly weigh the medical source statement, and did not substitute his own opinion for any medical opinions of any treating professionals.

In the motion for a Sentence Six remand, the plaintiff argues that the ALJ decision at issue here must be remanded based upon the subsequent favorable opinion by a different ALJ, which gave Dr. Khurso's assessment "significant" weight. (Doc. 19-1, p. 11). This argument is unfounded, however. First, the court notes that, while the ALJ who rendered the favorable opinion did give parts of the assessment "significant" weight, he ascribed "no weight" to Dr. Khusro's opinion that the claimant could not work. (*Id.*) In any event, the Eleventh Circuit Court of Appeals has unequivocally stated that "the substantial evidence standard permits administrative decision makers to act with considerable latitude, and 'the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'" *Parker v. Bowen*, 793 F.2d 1177, 1181 (11th Cir. 1986) (Gibson, J., dissenting) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)). Accordingly, the fact that one ALJ would ascribe "little" weight to an opinion that another ALJ deems "significant" does not require remand nor does it mean that either AJL improperly weighed the evidence. That is especially true given the circumstances of the later favorable decision rendered in this case. Between the time that ALJ Lassiter rendered the unfavorable decision at issue here and the

favorable decision that came almost three years later, the claimant had been receiving psychiatric care that included a diagnosis of "schizoaffective type schizophrenia, bipolar type, depressive type psychosis," and other ailments. The ALJ who rendered the favorable decision also had a third-party function report from the claimant's mother describing Ms. Freeman as being unable to bathe or dress herself, and describing the claimant's activities as far more limited than had been described in the evidence that was before ALJ Lassiter in the instant matter. The ALJ who rendered the favorable decision noted that Dr. Khruso's opinion was worthy of significant weight, "when considering the other medical evidence as a whole." The fact that later deterioration in her condition and further medical treatment lent credence to Dr. Khruso's earlier opinion does not mean that, at the time of the first decision, the evidence was "bolstered by the evidence" available at that time.

(2). <u>Alleged Bias In ALJ's Evaluation</u>

The plaintiff asserts that the ALJ was biased against her. The only evidence offered in support of this argument is a statistic that showed that ALJ Lassiter, from September 2014 until September 2015, approved only fourteen percent of the disability applications that came before him. Absent from this case is any

allegation that ALJ Lassiter showed any prejudice, hostility, or bias toward Ms. Freeman personally. The plaintiff's argument is based solely on this single statistic and a general allegation of prejudice against all disability claimants. Counsel for the plaintiff has made this same argument before in other cases. In fact, the district court case that counsel cites in support of his argument that this single statistic shows improper bias actually rejected the allegation of bias. *Putman v. Colvin*, 2016 U.S. Dist. LEXIS 129537 (N.D. Ala. Sept. 22, 2016). While counsel argues that the case has been appealed, he failed to update the court with the information that the case was affirmed by the appellate court last year. *Putman v. Soc. Sec. Admin., Comm'r*, 705 F. App'x 929, 936 (11th Cir. 2017) (holding that "without some particularized showing of a reason for disqualification, a generalized assumption of bias derived from the ALJ's low approval rate is insufficient to rebut the presumption of impartiality").

As the Commissioner points out, an allegation of generalized bias is irrelevant unless there is some evidence that indicates error in the claimant's particular case. A similar statistic—that an ALJ granted only 14 to 15 percent of the claims before him, while other ALJs in the state granted 63 percent—was presented in *Barry v. Colvin*, 2014 WL 2991089 (N.D. Fla. July 1, 2014), but the

district court denied remand, finding that "nothing in the record ... suggests that the ALJ was biased in deciding her disability claim, nor does the Court's review of the record reflect such bias." 2014 WL 2991089 at *9. The court in *Barry* followed the general rule that an ALJ's denial rate is insufficient to establish bias in the absence of other evidence reflecting actual bias on the part of the ALJ. *Id.* In this case, and in accordance with this general rule, the plaintiff has failed to establish bias on the part of the ALJ.

(3). Development of Record

The plaintiff asserts that the Commissioner has a "duty to develop the record," and argues that the ALJ erred in failing to order a consultative evaluation regarding Ms. Freeman's mental state. The Eleventh Circuit Court of Appeals has described the Commissioner's obligation to develop the record this way:

> Although the ALJ generally has an obligation to develop the record, the ALJ did not err by failing to inquire into [the claimant's] mental capacity. Even though Social Security courts are inquisitorial, not adversarial, in nature, claimants must establish that they are eligible for benefits. The administrative law judge has a duty to develop the record where appropriate but is not required to order a consultative examination as long as the record contains sufficient evidence for the administrative law judge to make an informed decision. *Doughty v. Apfel*, 245 F.3d 1274, 1281 (11th Cir. 2001) (citation omitted).

*Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1269 (11th Cir. 2007). As in *Ingram*, the record in this case contains ample evidence regarding the plaintiff's mental impairments. This is not a case in which the possibility of a mental impairment was suggested in the records of a physician but never explored, or where a consulting doctor recommended such an evaluation. The Eleventh Circuit Court of Appeals has held that where "no other physician recommended an additional consultation, and record was sufficiently developed for the ALJ to make a determination," the ALJ is not required to order an additional consultative examination. *Good v. Astrue*, 240 F. App'x 399, 404 (11th Cir. 2007). As the Commissioner points out, "there must be a showing of prejudice before it is found ... that the case must be remanded to the [Commissioner] for further development of the record." *Graham v. Apfel*, 129 F.3d 1420, 1423 (11th Cir. 1997). The duty to develop the record is not triggered in every instance where more information could be useful, but when the record has "evidentiary gaps which result in unfairness or clear prejudice." *Id.*

In this case, Ms. Freeman's treatment for depression and anxiety was well documented. The records showed that she complained of depression, was medicated, and was able to work even while experiencing symptoms of depression

and anxiety. The record included mental health treatment records from the Cleburne County Mental Health Board from 2013, shortly after Ms. Freeman stopped working, and the records from Dr. Khusro, a psychiatrist who treated her in 2014, as well as documentation from other health care providers and the emergency room where she was admitted after having suicidal thoughts.

The regulations governing consultative examinations describe the situations that may require the Commissioner to purchase a consultative exam as "to resolve an inconsistency in the evidence or when the evidence as a whole is insufficient to support a determination." 20 C.F.R. § 416.919a. The evidence in this case was sufficient to support a determination regarding Ms. Freeman's medical condition, and therefore the ALJ had no duty to order any further examination. Accordingly, remand is not warranted.

(4). Finding that Plaintiff Could Perform Past Work

The plaintiff argues that the ALJ's determination that she could perform her past work as a cashier, production assembler, mental health technician, and industrial cleaner was improper because the ALJ did not consider all of the duties of the past work and evaluate the claimants ability to perform those duties. However, the ALJ questioned Ms. Freeman about the work she did as a cashier, a

cleaner, an assembler and a mental health technician. He stated that he considered how the jobs are "actually and generally performed" in assessing Ms. Freeman's ability to do her past work.

A case cited by plaintiff as an example of the need to elicit detailed description of the duties of past work is easily distinguished. In *Nelms v. Bowen*, 803 F.2d 1164 (11th Cir. 1986), the ALJ had classified the plaintiff's past work as a custodial worker as "light work," but had not determined whether she "scrubbed floors or merely dusted," or whether she was required to move furniture. 803 F.2d at 1165. In the instant case, the ALJ obtained testimony from the Vocational Expert regarding the exertion levels of the plaintiff's past work, and also questioned the plaintiff at the hearing about her duties when she performed those jobs. Where such evidence has been obtained, Nelms is "of no avail" to the plaintiff. *Johnson v. Colvin*, 2013 WL 5411232, at *11 (N.D. Ala. 2013). Accordingly, the plaintiff's claim relating to the ALJ's assessment of her ability to perform past work is without merit.

## IV.  Conclusion

Upon review of the administrative record, and considering all of Ms. Freeman's arguments, the court concludes that the ALJ's determination is

supported by substantial evidence and was both comprehensive and consistent with the applicable SSA rulings. The objective medical and other evidence supports the ALJ's conclusion that plaintiff's conditions did not cause disabling limitations and instead shows that she could perform her past work.

Accordingly, the Commissioner's determination is due to be and hereby is AFFIRMED and the action is DISMISSED WITH PREJUDICE.

DATED the 21st day of August, 2018.

T. MICHAEL PUTNAM
UNITED STATES MAGISTRATE JUDGE